## NEW YORK COMMON PLEAS.

ALEXANDER T. STEWART and others agt. LAFAYETTE RANNEY.

Where on a purchase of goods a third person guaranties the payment to a certain amount, *based upon a credit of six months from the dates of the respective purchases*, and where the dates of the several purchases are *averaged*, and *notes* of the purchaser are taken *dated on the average date*, whereby the term of credit is extended as to some items and diminished as to others, the guarantor is *discharged*.

Though such method of averaging the account and taking notes may be an *established custom of trade*, such custom cannot render the guarantor liable, because the custom is in direct opposition to the terms of the guaranty.

The effect of customs of trade on commercial transactions stated and discussed.
(*This decision reverses S. C. at special term,* 23 *How. Pr. R.* 205.)

*New York General Term, December,* 1863.

DALY, BRADY and HILTON, *Judges.*

THE defendant, for a consideration, guarantied to the plaintiffs the payment for all goods purchased of them after May 1st, 1858, by Martin L. Ranney, not exceeding $500 in amount, and said Ranney to have a credit of six months from the date of the respective purchases.

Between May 20th and July 1st, 1858, six distinct purchases of goods were made upon the faith of this guaranty, based on the credit stated. On the latter day all these

purchases were averaged as to dates and amounts, and a note given by Martin L. Ranney to the plaintiffs, dated June 11th, for the sum then owing, payable in six months. A similar course was adopted respecting five separate purchases made between September 4th and October 23d, 1858, the note being dated October 16th, and payable in six months. For two remaining purchases on November 2d and 11th no note was given. The whole amount of the purchases was $915.14. Judgment was given for plaintiffs at the trial (*see* 23 *How. Pr. R.* 205), it having been proved under objection on the trial, that there is a custom in New York city among merchants to so average accounts, and that the defendant knew of this usage. The defendant duly appealed.

GEORGE R. THOMPSON, *for appellant.*

I. It is an unshaken principle of the law, that if the time of credit mentioned in the guaranty be either extended or shortened, the guarantor is discharged. (*Henderson* agt. *Marvin,* 11 *Abb. Pr. R.* 142; *Gates* agt. *McKee,* 3 *Kern.* 237; *Walroth* agt. *Thompson,* 14 *Wend.* 541; *S. C.* 6 *Hill,* 185; *Dobbins* agt. *Bradley,* 14 *Wend.* 435.) The only question in this case, then, is whether the usage in the city of New York, proved, controls this principle of law.

II. The objection to the admissibility of such evidence was well taken. The contract of guaranty in this case is express, that all purchases are to be based on a credit of six months from the dates thereof respectively. The word purchases being qualified by the word respectively, forbids any other construction than that the credit should run from the respective dates only.

(*a.*) It is perfectly well settled that a usage cannot control a contract when any contract is inconsistent with such a custom by its terms. (*Hinton* agt. *Locke,* 5 *Hill,* 437; *Vail* agt. *Rice,* 1 *Seld.* 156; *Walworth* agt. *Alcott,* 3 *Seld.* 65.)

Stewart agt. Ranney.

(*b*.) Especially is no custom admissible which the parties have seen fit expressly to exclude; and not only is a custom inadmissible which the parties have expressly excluded, but it is equally so if the parties have excluded it by a necessary implication, as by providing that the thing which the custom affects shall be done in any other way. For a custom can be no more set up against the clear intention of the parties than against their express agreement. (*Parsons on Contracts, vol.* 2, *p.* 59.)

(*c*.) We further insist that even had the guarantor and plaintiffs expressly agreed at the time of making the contract that an average note might be given, by parol, the evidence of it could not be proven in opposition to the terms of the agreement.

(*d*.) The definition of custom and usage is fully set forth and its application explained in 2d *Sumner*, 534, by Judge STORY. He says, "I own myself no friend to the almost indiscriminate habit of late years of setting up particular usages or customs in almost all kinds of business and trade to control, vary or annul the general liabilities of parties under the common law as well as under the commercial law. It has long appeared to me that there is no small danger in admitting such loose and inconclusive usages and customs, often unknown to particular parties, and always liable to great misunderstandings and misinterpretations and abuses to outweigh the well known and well settled principles of law. And I rejoice to find that of late years the courts of law, both in England and America, have been disposed to narrow the limits of the operation of such usages and customs, and to discountenance any further extension of them. The true and appropriate office of a usage or custom is to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts, arising not from express stipulations, but from mere implications and presumptions and acts of a doubtful or equivocal character. It may also be admitted

to ascertain the true meaning of a particular word, or of particular words in a given instrument, when the word or words have various senses—some common, some qualified and some technical, according to the subject matter to which they are applied. But I apprehend that it never can be proper to resort to any usage or custom to control or vary the positive stipulations in a written contract and *a fortiori* not in order to contradict them. An express contract of the parties is always, admissible to supersede or vary or control a usage or custom, for the latter may always be waived at the will of the parties. But a written and express contract cannot be controlled or varied, or contradicted by a usage or custom, for that would not only be to admit parol evidence to control, vary or contradict written contracts, but it would be to allow mere presumptions and implications, properly arising in the absence of any positive expressions of intention, to control, vary or contradict the most formal and deliberate written declarations of the parties." This authority is cited with approbation in *Hone* agt. *Mutual Ins. Co.* (1 *Sandf. S. C. R.* 137.)

III. It is evident that the custom proved in this case is in direct conflict with the terms of the guaranty.

IV. The case of *Smith* agt. *Dann*, (6 *Hill, p.* 543,) upon which the court below relies to sustain this judgment, is not applicable to this case.

(*a.*) There is no evidence in this case that the guarantor ever knew of the existence of any such custom. The custom is one not generally known, and one which the defendant could not be presumed to know. The custom in the case of *Smith* agt. *Dann* was not only a custom but a right given by law. All that is decided in that case is, that a mere change in the form of indebtedness from a running account to a promissory note, is that by that proceeding the makers of the notes gain three days grace, time within which to pay said indebtedness. It was evident in that case that there was no intention either to extend or shorten

the time of credit, and BRONSON, J., expressly intimates that it was an oversight on the part of the plaintiffs in not cutting off the usual days of grace when they received the notes. The case at bar is quite different. Here the terms of credit were extended or shortened very considerably, and in direct conflict with the terms of the guaranty, and some time after the sales took place. In the case of *Smith* agt. *Dann* there was nothing in the guaranty in terms conflicting with the extension given by the plaintiff, and consequently the decision in that case does not apply. (*See Colemord* agt. *Lamb*, 15 *Wend.* 331.)

MALCOLM CAMPBELL, *for respondents,*

relied on the case of *Smith* agt. *Dann*, (6 *Hill*, 543,) and on the opinion below (23 *How. Pr. R.* 205).

By the court, BRADY, J. The claim against a guarantor is *strictissimi juris*, and the terms of the guarantee must be complied with. If the term of credit be longer or shorter than that named by him he is discharged. (*Walrath* agt. *Thompson*, 6 *Hill*, 540; *S. C.* 2 *Comst.* 185; *Leeds* agt. *Dunn*, 6 *Seld.* 469; *Henderson* agt. *Marvin*, 11 *Abb. Pr. R.* 142.)

There is but one exception to the adjudications in this state on that subject, that I have been able to find, and that is the case of *Smith* agt. *Dann*, (6 *Hill*, 543.)

The plaintiff in that case accepted the vendee's note for three months, which, being entitled to days of grace, extended the term beyond that named in the guaranty. Justice BRONSON declared the rule to be that guaranties, like other commercial contracts, must be construed with reference to the usages of trade, and that by usage a credit of three months, where a note was taken, included the days of grace. He admitted that the point had never been decided. It is a matter of some importance to ascertain to what extent the usages of trade are to enter into a con-

tract, which is in itself clear and explicit—neither ambiguous in phraseology, nor requiring explanation by parol of any expression contained in it, and particularly when such usage relates not to the contracting party directly, but remotely, as in this case. Remotely, because the usage set up, which is to bind the defendant, is one affecting directly the relation of vendor and vendee, and entitling the former to average notes on a running account. Unless such a usage can be written over the signature of a guarantor, then the case of *Smith* agt. *Dann* has no general application, and must be confined to cases involving the same facts. There are two things to be said of that case. The first is that it stands alone. The second is that the credit given was the exact credit authorized, excluding the days of grace which custom gave to the debtor, and of which he could not be deprived save by express stipulation. The usage applied, it may also be said, was almost universal, governing promissory notes for whatever purpose given, and therefore one which every merchant must be supposed to have known. The usage relates, however, more to the mode of payment than to the credit given. If the goods had been sold on a credit of three months, and no notes had been given, no days of grace would have extended that credit an hour beyond the time named. The authorities, as already suggested, exact a strict compliance with the terms of the guaranty. Resort may, doubtless, be had to the usages of trade, to explain ambiguities, or the commercial meaning of a doubtful phrase, and the instrument is to be construed according to what is fairly to be presumed to have been the understanding of the parties, without any strict technical nicety, as said by C. J. THOMPSON in *Lee* agt. *Dick*, (10 *Peters*, 482.) None of these elements are necessary in this case. The guaranty is clear and explicit. Its terms are plain, and it is conceded that they have been departed from. It is true that the departure is said to be justified by the custom of

averaging credits, but I do not think the rules governing guaranties can be said to allow the application of such a custom. I think, also, that this case does not fall within any general rule of construction which will warrant the addition of a clause to the defendant's contract. The case of *Smith* agt. *Dann* must, if these views be correct, be confined to a class of cases *sui generis*, and cannot have a general application.

The judgment should be reversed.

DALY, F. J., concurred.

HILTON, J., *dissenting*. I do not perceive the necessity of departing from the principle stated in *Smith* agt. *Dann*, a decision which has never been questioned before in any reported case.

I, therefore, adhere to the views stated in my opinion at special term, and think the judgment should be affirmed.